```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
_____
                              )
OVERSEAS PHILADELPHIA, LLC,    )
                              )
            Plaintiff,        )  Civil Action No. 11-1663 (EGS)
      v.                      )
                              )
WORLD COUNCIL OF CREDIT        )
UNIONS, INC.,                  )
                              )
            Defendant.        )
_____)
```

## MEMORANDUM OPINION

Plaintiff Overseas Philadelphia, LLC brought a one-count Complaint against Defendant World Council of Credit Unions, Inc. ("WCCU"), alleging (1) breach of the maritime contract entered into by the parties, and (2) breach of the implied duty of good faith and fair dealing. Pending before the Court is Defendant's Motion to Dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Upon consideration of the motion, the opposition and reply thereto, the relevant law, the record in this case, and for the reasons stated below, the Court will **GRANT** Defendant's Motion to Dismiss.

### I.   BACKGROUND

On March 19, 2010, Plaintiff and Defendant entered into a maritime contract (the "Charter Party"), pursuant to which Defendant chartered the vessel owned by Plaintiff to carry 23,000 tons of wheat from the Gulf Coast to Addis Ababa,

Ethiopia via the port of Djibouti.  Compl. ¶ 6.  The wheat was provided to Defendant at no cost by the U.S. Department of Agriculture ("USDA") under the Food for Progress Act ("FFPA"), 7 C.F.R. § 1499, *et seq*.  Compl. ¶ 7.  Paragraph 35 of the Charter Party provides: "This Charter Party is subject to all the provisions of the [FFPA], rules and regulations issued pursuant thereto and all applicable USDA regulations."  Compl. Ex. A, at ¶ 35.  One of the applicable regulations provides, in pertinent part, that "[t]he participant shall make all necessary arrangements for receiving the donated commodities in the targeted country, including obtaining appropriate approvals for entry and transit," and that "[a] participant shall arrange with the government of the targeted country that all donated commodities to be distributed will be imported and distributed free from all customs, duties, tolls, and taxes."  Compl. ¶ 9 (citing 7 C.F.R. § 1499.8(a), (d)).  Defendant concedes that it was a "participant" under the FFPA.  Def.'s Mem. of P&A in Supp. of its Mot. to Dismiss ("Def.'s Mem.") at 2.

    According to Plaintiff, the vessel loaded in a timely manner and departed from Galveston, Texas on April 15, 2010.  Compl. ¶ 12.  Soon after the vessel's departure, Plaintiff's agent, Phoenix Chartering ("Phoenix"), contacted Defendant's agent, Pacific Cargoes, Inc. ("PCI") to confirm that all duty exemptions would be in order prior to the vessel's arrival.  *Id*.

¶ 14.  PCI responded that "the documentation would be distributed in 'ample time to have all clearances in place prior to vessel arrival in Djib[outi].'"  *Id*.  Phoenix sought further confirmation that WCCU's documentation obligations would be fulfilled, and Phoenix expressly advised PCI that special care was needed for the transaction and that Plaintiff would suffer damages if the vessel were delayed.  *Id*. ¶ 15.  According to Plaintiff, another of Defendant's agents, BKA Logistics LLC, responded "that the sale was complete, that bills of lading had been issued, and that WCCU would be advised 'to have everything in order prior to Vessel arrival.'"  *Id*.

The vessel arrived at the port of Djibouti on May 12, 2010. According to Plaintiff, however, the cargo documentation -- in particular documentation to establish that Plaintiff could discharge the cargo free of duty -- was still pending clearance with Ethiopian customs authorities.  *Id*. ¶¶ 16-17.  Therefore, the cargo could not be discharged and the vessel had to wait at anchorage.  *Id.*  Plaintiff asserts that Defendant could have paid the duty provisionally and sought reimbursement upon obtaining clearance so that discharge of the cargo could begin, but Defendant chose not to do so.  *Id*. ¶ 18.  During the time that the vessel was idled, Plaintiff secured, at its own expense, a lay berth within the port to safeguard the vessel and cargo until receiving clearance.  *Id*. ¶ 19.  Ethiopian customs

cleared the cargo on May 21, 2010, and Plaintiff began discharging the vessel on May 23, 2010.  *Id*. ¶ 20.  Plaintiff alleges that, during the period from May 12 through May 23, 2010, it incurred significant charges including "daily operating costs, security, port charges and contractor truck charges."  *Id.* ¶ 21.  Plaintiff sent an invoice for these charges to Defendant on June 8, 2010, but Defendant has not paid the invoice.  *Id.* ¶ 24.

On September 14, 2011, Plaintiff filed its Complaint alleging breach of contract and the implied duty of good faith and fair dealing.  Plaintiff seeks recovery of damages it suffered due to Defendant's failure to obtain the necessary import documentation for discharge of the cargo prior to the vessel's arrival in Djibouti, despite Defendant's assurances that it had done or would do so.  *Id.* ¶¶ 1, 28-29.  Defendant has filed a Motion to Dismiss the Complaint pursuant to Rule 12(b)(6).  In its Motion, Defendant argues that a clause of the Charter Party precludes Plaintiff from recovering damages because that clause places all risk, time, and expenses of discharge upon Plaintiff.  The motion is ripe for determination by the Court.

## II. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint.  *Browning v. Clinton*, 292 F.3d 235,

242 (D.C. Cir. 2002).  A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted).  When ruling on a motion to dismiss under Rule 12(b)(6), a judge must accept as true all of the factual allegations contained in the complaint and grant the plaintiff the benefit of all inferences that can be derived from the facts alleged.  *Aktieselskabet AF 21 November 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 15 (D.C. Cir. 2008); *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  A court need not, however, "accept inferences drawn by plaintiff[] if such inferences are unsupported by the facts set out in the complaint.  Nor must the court accept legal conclusions cast in the form of factual allegations."  *Kowal*, 16 F.3d at 1276.  In addition, "[t]threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The complaint must plead facts that are more than "merely consistent with" a defendant's liability; "the plaintiff [must plead] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556); *Rudder v.*

5

*Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012). In evaluating a Rule 12(b)(6) motion, the Court may consider the facts alleged in the complaint, as well as any documents either attached to or incorporated in the complaint. *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624-25 (D.C. Cir. 1997).

**III. ANALYSIS**

    **A.   The Charter Party Precludes Claims for Detention Damages**

Defendant argues -- and Plaintiff does not dispute -- that Plaintiff's claims are for "detention" damages. Def.'s Mem. at 5-6. Clause 18 of the Charter Party states, in relevant part: "The cargo is to be discharged at vessel's time, risk and expense with no demurrage, no despatch, no detention."[1] Compl. Ex. A, ¶ 18. Therefore, Defendant argues that the clear terms of the Charter Party preclude Plaintiff from bringing a claim for detention damages, and this case must be dismissed. Def.'s Mem. at 6-10.

Detention damages are actual damages due the vessel owner for delay in the discharge of the cargo. *Id.* at 5 (citing GRANT GILMORE & CHARLES L. BLACK, JR., THE LAW OF ADMIRALTY 212-13 (2d ed. 1975)). Detention damages are equivalent to "demurrage," which is defined as "the sum which is fixed by the contract of

---

[1] The "vessel" was defined as the M/T Overseas Philadelphia, owned by Plaintiff. Compl. Ex. A, at 1.

6

carriage . . . as remuneration to the owner of a ship for the detention of his vessel beyond the number of days allowed by the charter-party for loading and unloading[.]"  BLACK'S LAW DICTIONARY 432 (6th ed. 1990); *see also Fregata Shipping Co. v. Star Carriers, S.A.*, No. 84-0756, 1987 WL 8716, at *2 n.1 (D.D.C. Feb. 27, 1987) ("'Demurrage' is the charge assessed under the charter party to the charterer for detaining a vessel beyond the free time stipulated for loading and unloading."); *Hellenic Lines, Ltd. v. Dir. Gen. of India Supply Mission*, 319 F. Supp. 821, 831 (S.D.N.Y. 1970), *aff'd on other grounds*, 452 F.2d 810 (2d Cir. 1971) (hereinafter, *Hellenic I*).[2]  "It is plain that when the parties choose, they may contract out of any liability for delay in discharge."  *Hellenic Lines, Ltd. v. Embassy of Pak.*, 467 F.2d 1150, 1156 (2d Cir. 1972) (internal citation omitted) (hereinafter, *Hellenic II*); *see also Am. S/A Frutas E Alimentos v. M/V Cap San Rafael*, 426 F. Supp. 2d 312, 318 (E.D. Pa. 2006) ("Parties to a maritime contract are free to contract away liability for delay.").

Plaintiff argues that a "no demurrage or detention" clause cannot excuse a charterer from liability for delays caused by

---

[2] The distinction between the two terms is that "demurrage" is the contractually stipulated amount for detention, *see Hellenic I*, 319 F. Supp. at 831, while "detention" damages are fixed by the court, *see* GILMORE & BLACK, at 212.  Here, the parties did not stipulate an amount for demurrage for unloading the cargo.

7

its own actions.  Instead, Plaintiff contends that such clauses are intended to cover only delays that are beyond the charterer's control.  *See* Pl.'s Opp'n at 5-6.  The Court does not find support for the distinction that Plaintiff asserts in either the case law or the express terms of the Charter Party.

In *Hellenic I*, the freight contract between the parties contained a clause that provided that "no demurrage or despatch is applicable at either loading or discharging ports."  319 F. Supp. at 831.  The court concluded that this clause "clearly excludes any claims against the defendant for delay in berthing the vessels or discharging cargo, contractual or non-contractual."  *Id.; see also Hellenic II*, 467 F.2d at 1155-56 (concluding that "the 'no demurrage' clause contained in the freight contracts . . . preclude[s] holding [defendant] liable for detention damages").[3]  Plaintiff argues that in each of these cases, the courts found expressly that the charterer was not at fault.  *See* Pl.'s Opp'n at 6.  Although in its presentation of

---

[3] Defendant also purports to rely on a case from this District, *Sealift Bulkers, Inc. v. Republic of Armenia*, 96 F. Supp. 2d 1 (D.D.C. 2000).  There, although the contract between the parties contained a "no demurrage" clause, the crux of the court's opinion related to a separate clause regarding "special charges."  The plaintiff in that case had admitted that it was responsible for expenses related to transportation of the cargo, and therefore it could only recover expenses for extra storage if some provision of the charter shifted responsibility for the cost of storing the cargo to the defendant.  *See* 96 F. Supp. 2d at 3.  *Sealift Bulkers* is thus not relevant to the issues in this case.

the facts, the *Hellenic I* court noted that "[t]here is no evidence in the record that the slowdown was the result of any fault on the part of the [charterer], nor did the [charterer] have any control over it," the issue of fault does not appear to have been material to -- or even considered in relation to -- the court's conclusion that the "no demurrage" clause excluded claims for delay against the charterer. *Hellenic I*, 319 F. Supp. at 825, 831.  Similarly, in *Hellenic II*, the Second Circuit's conclusion that a "no demurrage" clause precluded liability for detention damages included no mention whatsoever of the reason for the delay and did not consider whether or not the charterer had been at fault. *See* 467 F.2d at 1156.  Relying on *Hellenic I*, the court in *Hellenic II* held that the charterer was not liable because the contract included a "no demurrage" clause, and "the most logical interpretation" of this clause is to preclude liability for detention damages. *Id.; see also Intercontinental Transp. v. India Supply Mission*, 261 F. Supp. 757, 758 (S.D.N.Y. 1966) ("Where there is no express exception, a demurrage clause, by settled construction, covers all delays during the process of loading, including failure to supply sufficient cargo.  The shipowner may not recover detention damages for delays covered by the demurrage clause.").

By contrast, Plaintiff argues that case law and arbitration awards support its argument that, in cases where the charterer

9

or shipper's actions caused avoidable delay, a "no demurrage or detention" clause does not bar damages for breach of contract. Pl.'s Opp'n at 7-9.  The authorities cited by Plaintiff, however, construe contractual language dealing with "full liner terms," rather than clauses precluding liability for demurrage.[4] *See Transamerican Steamship Corp. v. Riviana Int'l, Inc.*, No. 80 Civ. 5075 (LBS), 1982 WL 195631 (S.D.N.Y. June 10, 1982) (dealing only with provision for "full liner terms"); Pl.'s Opp'n Ex. B, *Seaborne Trading Corp. v. Louis Dreyfus Corp.*, SMA No. 3318SP, at 1585-86 (N.Y. Nov. 25, 1996) (holding that where defendant was responsible for delays that were "unreasonable and excessive," in spite of the fact that the terms were "full liner terms," "and because there was *no provision for laytime and demurrage*, . . . Owner is entitled to be compensated for detention") (emphasis added).[5]  Plaintiff has not provided the Court with any authority to support the proposition that "full liner terms" should be equated with a "no demurrage" clause in

---

[4] "Full liner terms" is a term of art that means the vessel owner, "[bears] the burden of loading and discharging cargo and assume[s] all risk of delay in port."  *Mendes Jr. Int'l Co. v. M/V Sokai Maru*, 43 F.3d 153, 154 (5th Cir. 1995).

[5] The only arbitration award cited by Plaintiff in which the charter party actually contained a "no demurrage" clause is also distinct.  In *Unimarine, Inc. v. Egyptian Company for Maritime Transport*, SMA No. 1436, 1980 WL 580843 (N.Y. May 13, 1980), the charter party provided that the charterers were responsible for loading and discharging the cargo, not the ship owners.

interpreting maritime contracts. Indeed, the definition of "full liner terms" that Plaintiff itself cites suggests that the term is broader than a "no demurrage" clause, and therefore that the term must operate differently in a charter party. *See* Pl.'s Opp'n at 7 n.10 ("['Full liner terms'] . . . means that the shipowner bears all costs related to the cargo handling and carriage." (quoting BES' CHARTERING AND SHIPPING TERMS (11th ed. 1992))). Plaintiff's attempt to analogize provisions regarding "full liner terms" to a clause specifying "no demurrage or detention" is therefore not persuasive. Had the parties intended to ship on "full liner terms," they could have used that language in the Charter Party.

As Defendant argues, Clause 18 of the Charter Party unambiguously precludes holding it liable for detention or demurrage. "Under federal maritime law, a court 'may not look beyond the written language of the document to determine the intent of the parties unless the disputed contract provision is ambiguous.'"[6] *United States ex rel. E. Gulf, Inc. v. Metzger Towing, Inc.*, 910 F.2d 775, 779 (11th Cir. 1990) (quoting *Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 332-33 (5th Cir. 1981)); *see also F.W.F. Inc. v. Detroit Diesel Corp.*, 494

---

[6] The interpretation of a maritime contract, where the dispute is not an inherently local one, is controlled by federal law. *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 22-23 (2004); *see also Casco Marina Dev., LLC v. M/V Forrestall*, 384 F. Supp. 2d 154, 160 (D.D.C. 2005).

11

F. Supp. 2d 1342, 1357-58 (S.D. Fla. 2007).  If the contract is unambiguous on its face, the parties' intent must be gathered from the instrument itself without reference to extrinsic evidence.  *F.W.F.*, 494 F. Supp. 2d at 1358.  Plaintiff argues that "a contractual provision that purports to excuse a party from liability for its own breach or fault must provide so expressly in order to be given effect."  Pl.'s Opp'n at 10.  The Court concludes that Clause 18 of the Charter Party is unambiguous.  The plain language of Clause 18 expresses a clear intention that discharge was to take place at Plaintiff's time, risk and expense, with no damages available for delay, regardless of the cause of the delay.  Therefore, the unambiguous language of the Charter Party makes clear that Defendant cannot be liable for the relief Plaintiff seeks and this case must be dismissed.

    **B.**    **Failure to State a Claim for Relief**

Even if the Court did not conclude that the "no demurrage" clause prevents Plaintiff from seeking detention damages from Defendant, the Complaint does not contain factual allegations that, taken as true, would permit the Court to infer that Defendant breached any provision of the Charter Party.  In order to state a claim for breach of contract in an admiralty case, a plaintiff must state: (1) the terms of the maritime contract; (2) that the contract was breached; and (3) the reasonable value

12

of purported damages.  *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1249 (11th Cir. 2005) (citing *Exxon Corp. v. Cent. Gulf Lines, Inc.*, 500 U.S. 603, 605-06 (1991)).  In the Complaint, Plaintiff's sole allegation in support of its breach-of-contract claim is that Defendant failed to "obtain[] appropriate approvals for entry and transit before the Vessel arrived at Port, and [failed] to make timely arrangements with the Ethiopian government that the cargo be imported and distributed free from all customs, duties, tolls, and taxes."  Compl. ¶ 28.  Plaintiff does not allege that Defendant failed to obtain the approvals, but rather that it failed to obtain them before the vessel arrived at port.  However, the Charter Party nowhere obligates Defendant to have the approvals ready before the vessel's arrival in Djibouti.  Rather, it simply imposes upon Defendant the responsibility set forth in the FFPA regulations for making all necessary arrangements for receipt of the cargo in Ethiopia, including obtaining the approvals for entry and transit.  Compl. ¶ 9 (citing 7 C.F.R. § 1499.8).[7]  One cannot breach a contract without breaching a particular

---

[7] "When a contract fails to specify a time for the performance of an act, the law implies that it must be done within a reasonable time."  *Armenian Assembly of Am., Inc. v. Cafesjian*, 772 F. Supp. 2d 20, 124 (D.D.C. 2011) (internal citations omitted); *see also Hellenic II*, 467 F.2d at 1153-54.  Even if a reasonable time is read into the Charter Party for securing the clearance documentation, the Complaint nowhere alleges that the 11-day delay between the vessel's arrival and the clearance being approved was unreasonable.

obligation created under the contract. *See Ihebereme v. Capital One, N.A.*, 730 F. Supp. 2d 40, 47 (D.D.C. 2010). The Complaint does not allege any contractual term or regulatory duty that required Defendant to obtain the approvals before the vessel arrived at port. Moreover, Plaintiff fails to identify any specific terms of the Charter Party that were breached. As such, Plaintiff has not pled sufficient facts in order to state a legally-cognizable claim for breach of contract.

In addition, the Complaint fails to state a claim for breach of the implied duty of good faith and fair dealing. Plaintiff asserts that Defendant breached its implied duty of good faith and fair dealing by "failing to secure the necessary documentation and import permits before the Vessel arrived at the discharge port despite assurances from [Defendant's] agents that it had done or would do so," and "by allowing the Vessel to proceed to Djibouti without informing [Plaintiff] that the approvals necessary to effectuate the basic purpose of the Charter and allow discharge of the cargo had not in fact been secured." Compl. ¶ 29. Defendant argues that there are no factual allegations in the Complaint upon which the Court can infer bad faith motive or malice, without which there cannot be a breach of the implied duty. *See* Def.'s Mem. at 12. Plaintiff contends, however, that Defendant's failure to have the documentation in order before arrival caused substantial damages

14

to Plaintiff, and that Defendant's failure to notify Plaintiff that the clearance would not be obtained prevented Plaintiff from being able to take steps to reduce its losses.  Pl.'s Opp'n at 10-12.

"Every maritime contract imposes an obligation of good faith and fair dealing between the parties in its performance and enforcement."  *F.W.F.*, 494 F. Supp. 2d at 1359 (citing *Flores v. Am. Seafoods Co.*, 335 F.3d 904, 913 (9th Cir. 2003); *Misano di Navigazione, SpA v. United States*, 968 F.2d 273, 274-75 (2d Cir. 1992)); *see also, e.g.*, *Gaujacq v. EDF, Inc.*, 601 F.3d 565, 580 (D.C. Cir. 2010); *Allworth v. Howard Univ.*, 890 A.2d 194, 201 (D.C. 2006).[8]  Under the implied covenant of good faith and fair dealing, "neither party shall do anything to injure or destroy the right of the other party to receive the benefits of the agreement."  *F.W.F.*, 494 F. Supp. 2d at 1359 (internal quotation marks and citation omitted); *see also Allworth*, 890 A.2d at 201.  Accordingly, "[i]f the party to a contract evades the spirit of the contract, willfully renders imperfect performance, or interferes with performance by the other party, he or she may be liable for breach of the implied

---

[8] The standards for breach of the implied duty of good faith and fair dealing are materially the same under federal maritime law and District of Columbia law, as both follow the Restatement (Second) of Contracts, § 205.  *See Flores*, 335 F.3d at 913; *F.W.F.*, 494 F. Supp. 2d at 1359; *Allworth*, 890 A.2d at 201.

covenant of good faith and fair dealing." *Allworth*, 890 A.2d at 201 (internal citations omitted).  A party to a contract engages in bad faith by "violat[ing] standards of decency, fairness or reasonableness," or "engag[ing] in any arbitrary or capricious action" towards the other party.  *Gaujacq*, 601 F.3d at 580 (citing *Allworth*, 890 A.2d at 201-02).

Plaintiff does not allege that Defendant's failure to obtain the import documentation by the time the vessel arrived at port had the effect of "injur[ing] or destroy[ing] the right of [Plaintiff] to receive the benefits of the agreement." *F.W.F.*, 494 F. Supp. 2d at 1359.  Plaintiff also fails to allege facts that would permit the Court to conclude that Defendant's failure to obtain the import documentation within that time amounted to "violat[ing] standards of decency, fairness or reasonableness" or "engag[ing] in any arbitrary or capricious action" towards Plaintiff.  *Gaujacq*, 601 F.3d at 580.  As the allegations in the Complaint acknowledge, the necessary import documentation ultimately *was* obtained.  Compl. ¶ 20.  Plaintiff also alleges that Defendant breached the implied duty of good faith and fair dealing by failing to inform Plaintiff before the vessel's arrival that the clearance permits had not yet been secured.  Compl. ¶ 29.  However, Plaintiff does not allege sufficient facts to support an inference that Defendant's failure to inform Plaintiff of the delay was a violation of the

"standards of decency, fairness or reasonableness" or that Defendant's omission was "arbitrary or capricious." *Gaujacq*, 601 F.3d at 580. Therefore, based on the minimal allegations Plaintiff has made regarding Defendant's actions, Plaintiff has failed to allege facts that would permit the Court to infer that Defendant acted with the requisite bad faith.

Accordingly, because Plaintiff has failed to allege sufficient facts to demonstrate that Defendant breached either the Charter Party or the implied duty of good faith and fair dealing, the Court will **GRANT** Defendant's Motion to Dismiss.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss the Complaint pursuant to Rule 12(b)(6) is **GRANTED**, and this case is hereby **DISMISSED**. A separate Order accompanies this Memorandum Opinion.

**SIGNED:    Emmet G. Sullivan**
**United States District Court Judge**
**September 24, 2012**